Good afternoon everyone. The United States Court of Appeals for the Federal Circuit is privileged to be holding its regular oral argument session here at the law school in Charlottesville. This is the first time that our court has sat in the Commonwealth of Virginia or in Charlottesville and of course necessarily then the first time we've sat at the law school. We have sat previously elsewhere in the Fourth Circuit. This is a part of our regular annual schedule where at least once a year we sit in a distant city far from Washington or as in the case of Charlottesville maybe not quite so far from Washington but it's a regular part of our work so we're very pleased to be here. I might comment that the cases normally are selected at random and as far as I know that was true with respect to the cases which you will hear and so I take it that it's your good luck that at this distinguished academic institution your panel, two of the members of your panel have great connections. Judge Plager who is on my right was a career law professor at a number of law schools and was the dean at the Indiana Law School before he was drafted by the president to work in the White House and various other places. Judge Rader on my left has taught at this law school for many years as well as at other law schools and holds the world's record on the most frequent travels around the globe as well as around the country to teach and lecture in patent law so you have two very good educators. I myself am a student because exactly 40 years ago this year I graduated from this institution so fun to be back. The panel has before it a total of six cases, two of them are being submitted just on the brief without oral argument. They are appeals number 06-3130 Jarrell versus Office of Personnel Management and appeal number 06-3229 Bennett versus Department of Treasury. The four argued cases will hear argument first in appeal number 06-1090 Akiva versus Adidas. Mr. Thomas, good afternoon. Good afternoon Your Honor. Welcome and please proceed. May it please the court my name is Akiva LLC. There are two patents in issue in this appeal. Both relate to improvements in athletic shoes. The issue before this panel is whether or not the district court in finding that the inventor Mr. Meshin had unequivocally and clearly disclaimed scope and subject matter that on its face the words of the claim don't cover anything in the abstract. They only cover what the written description and the other portions of the total patent document preceding the claims suggest that they cover. Precisely Your Honor and why we think it was critical and why we think where the district court took a wrong turn is failing to appreciate and weigh the contrary statements and contrary actions in the intrinsic record including the prosecution history of both patents before reaching a finding of a clear and unequivocal disclaimer of claim scope. Are you saying the method used was wrong or the result was wrong or both? I believe that the result was wrong. I believe the method was wrong because it failed to weigh. Let's do the method first. Precisely what was reversible error in the method employed by the district judge in this case? The district court taking for example starting with the 300 patent Your Honor. The district court looked to one particular statement in the specification. That statement occurs at column 7 I believe around lines 12 through 14 and what it says is that there in all embodiments the present invention includes means for selectively locking. The district court focused on that all embodiments language. We think to the exclusion of compelling evidence to the contrary in other words to the contrary that the inventor wasn't saying with that statement that you can't practice the inventive features he disclosed without using a detachable heel. You say that the district judge relied solely on the all embodiments phraseology but my the judge also relied on the description of the defects in the prior art and what the remaining problems were of wear and compression and so forth in the heel portion of athletic shoes and that therefore there were at least two critical portions of language. One at the beginning and one in the detailed written description. So I don't think I can accept the idea that the all embodiments language was used as some sort of litmus test by the district judge. It looked to me like other language was also relied on. I believe Your Honor may be thinking about the reasoning and rationale behind the finding of disclaimer in the 471 patent. I think what the chief judge is referring to is the language that appears right in the patent itself and by the way this is a very good case I think for today since half the audience no doubt are wearing athletic shoes. So they'll have an interest in this case. Now let me since you quoted language to us from the patent let me quote some language back to you from the patent and this is from column one beginning right at field of the invention in the 471 patent. The present invention relates generally to multi-purpose athletic shoes and more particularly to athletic shoes with interchangeable slash detachable rear soles that provide extended and more versatile life and better performance in terms of cushioning and spring. It seems to me that we have an interesting situation in which your client the inventor told us what his invention is. Now admittedly he claimed more than he invented but isn't the laws the chief judge has you can't get more than you invent. I believe my point was correct your honor you just quoted me from the 471 patent. I was quoting the chief judge from the 300 patent. The all embodiments language only occurs in the 300 patent specification. The 471 patent specification. Fair enough we'll take them one at a time but the 300 patent also talks about the problem in the prior art where the rear sole being integral with the forward sole. It seems to me that supports reinforces the all embodiments language in the 300 patent that the judge relied on. So there is language outside of the all embodiments language. Well respectfully your honor we're trying to achieve a construction of this claim language which encompasses an integral sole. A sole that is fixed in position. We're quite aware of that but your anything in the integral sole technology but in the separable or pivotable sole technology that he was pioneering. We would respectfully disagree pointing your honors attention to column 10 lines 12 to 14 of the 300 patent. Our inventor made the explicit statement that his flexible plate inventions can be used with permanently attached rear heels. On top of that. Well then then your argument depends on our accepting the idea that that each of these two patents actually covers two separate and distinct inventions. One having to do with what I'll call heels for simplicity purposes that pivot or detach and are replaceable and second having to do with the anti-compression pad like device that you insert in the heel. Well that's why we have to accept your argument that each of these patents covers two separate and distinct inventions. It's not just my argument your honor. There are separate patents that issued from the family of each of these two patents with claims directly going to the family. I'm just trying to focus on 300 and 471. With respect to the 300 your honor note the absence in the abstract or the summary of the invention of any reference to any detachability or selectively positionable feature. But in the 300 we have repeated references to rotatability. Why doesn't that cause you difficulty. Well there's one reference to a heel that's not detachable but rotatable. It's in one sentence. I've got column 741 through 44, column 10, 12 through 15. We were just reading column 11, 59. All of these referring to the rotatable feature. And certainly the claim was intended to cover all forms of attachment. All forms of securing the heel to the shoe. It certainly was not intended to exclude a permanently attached heel. So I don't think it causes me a problem your honor because we believe the claim language covers a rotatable heel. Well you say intended but I thought the case law was clear that the intention of the inventor or even the drafter doesn't control. What controls is what the ordinary artisan in this field would make reading the language that was actually put in the patent. It might be quite different than the subjective intention of either the drafter or the inventor. But if there is evidence within the intrinsic record which suggests how and why the inventor was claiming his invention the way he did. For example the existence of related patents with express language modifiers modifying the term secured to mean either detachable or selectively rotational. In fact the claims as originally the doctrine of claim differentiation as I recall it has to do with different claims in the same patent. It doesn't apply from one patent to the next to the next. I'm not arguing claim differentiation your honor. All I'm pointing out is that one of ordinary skill in the art would recognize from looking at the intrinsic record that this inventor knew how to claim detachable or rotatable heels when he wanted to. Should we assume from your argument that you concede the 471 patent is limited to detachable? Absolutely not your honor. Absolutely not. And I'd like to get to the 471 patent because again there. But I thought you were just telling us that we can differentiate 300 from 471 because 471 clearly is detachable. No your honor I'm saying that there are patents in the family from which the 471 application is issued. We want to deal with the patents in front of us counsel. But they're in the intrinsic record your honor and they're part of the record here. And in Liable Flarsheim this court pointed to the fact that the inventor had pursued different claims in different related patents that expressly required a pressure jacket and then expressly and purposely left out that limitation in the claims of the patent in suit. And this court found that there was no implied recitation of that feature. Likewise in both of the patents in suit in this case you have related patents that expressly define the type of securing attachment from the heel to the bottom of the shoe. You have in the 471 patent original claims that were presented along with that application that expressly defined a detachability function between the heel and the rest of the shoe. Those claims were canceled in the application prosecution for the 471 and brand new claims were submitted that totally avoided and left out any modifiers or qualifiers on the type of securement. You can change the claims but you can't change the rest of the specification. So it seems like the language that remains is going to cabin your ability to broaden claims and maybe that's just what happened here. No, Your Honor, that's not what happened here. What happened here is the inventor showed a preferred embodiment which had numerous features. Flexible plates, detachable or selectively positionable heels, U-shaped members that added spring to the gait. The inventor expressly defined what the advantages were that each of those features provided. Either increased wear, longer life of the shoe, or enhanced spring. Coming to the 471, once again, the inventor seems to use this sweeping language of the present invention is. In this case, it's the present invention incorporates a heel structure including a detachable rear sole. That's column four as I'm sure you're familiar with. Isn't that, when you define your invention as including something, how do we get around that? And then goes on just two sentences later, it's at the bottom of column 13, at the top of column 14, or 12 and 13, I'm sorry, where the applicant then states that all of the various features that he described for his then preferred embodiment, which admittedly in his preferred embodiment included a rotatable or positionable heel, but he said all of those features could be used in any combination and independent of one another. But that's at the, that's kind of the boilerplate that's placed in the last sentence of the patent, am I correct, on column 13? No, your honor, it's a little bit different than the typical boilerplate which just says my claims are only limited by what, my invention is only limited by what I claim as follows. This is different because here the inventor specifically identified features, separate features that each had a particular purpose. Enhanced spring, for example, for the flexible plate. Increased wear and extended life for the replaceable heel. And he said, we can use the detachable heel separately from the flexible plate. And he said that all of the features, admittedly features that he at that time believed worked best all together. But there's no reason that claims need to be limited so that they achieve all the stated objects and all the stated advantages of the invention. All right, I think we have your argument pretty clearly in mind and your time is fleeting. You have just over two minutes left for rebuttal if you want to preserve. I would, your honor, like to reserve that. Thank you very much. Thank you, Mr. Thomas. Mr. Klein, we'll hear from you now. Good afternoon, your honors. May it please the court. My name is Doug Klein, representing Adidas in this matter. The district court did, in fact, properly construe the claims of the 471 patent, addressing that first, to require a rear sole detachably secured below a portion of the upper. This court made clear in its Phillips decision that there are two- The language of the patent's claim says secured. Yes.  That's correct, your honor. Let's stick with the language of the claim. Right. Secured does not necessarily mean detachable, that it can be detached. I agree that secured- If you secure something, you stick it together for good. That's one way to use the word secured. Certainly, detachably secured is within the scope of the word secured. Akeva used the term secured in connection with the 300 patent. So it's permanently secured within the scope of the normal meaning of the single word secured. That's right. In the case of the 300 patent, permanently secured is within the scope of the court's claim construction ruling. And the 300 patent does allow that a heel need only be adjustable within the scope of that specification. It need not be permanently attached when that patent used the term secured. In the 471 patent, though, you're correct, obviously, your honor, that the term in the claim is only secured. And what the court needs to do in that instance, consistent with this court's precedent, is understand what those claims mean in the context of the specification when it was filed. The specification that puts the public ultimately on notice, what is the scope of the invention that this inventor has come up with? Well, we say that the claims put the public on notice of what's protected. First and foremost, the claims. And the specification just illuminates the objective correct meaning of the claim language. It was still the claim language. Look at the specification where I was speaking with Mr. Thomas just a moment ago. It's intended that present invention cover all possible combinations of features, modifications, variations, provided they come within the scope of the claims. Why isn't permanently attached right within the scope of secured? Well, first of all, in the case of the 471 patent, because the inventor specifically criticized the prior art for having permanently attached shoes. Does that mean he can't claim something that impinges a little bit on the prior art, provided there's some new feature that imparts patentability? Impinges a little bit, your honor, is, I don't know exactly how to field that. I do think that if the inventor advocates for a feature of his invention as distinguishing his invention over the prior art, tells the patent office, my invention is better than the prior art, tells the patent office that many times, your honor, and I want a patent for that reason, then the inventor ought to be held to that. The public ought to be able to rely that that is a feature of the invention. Particularly whereas here, it is consistent with the claim language that is used. Well, under the statute, he's got to disclose the best mode. And if the best mode is having all three of these features, or two of the three at least, then he's kind of forced to do that in the detailed description of the preferred embodiment. That doesn't necessarily mean that he's precluded from claiming more broadly. And when you just have an unmodified word like secured, the inference is he is claiming more broadly. I think with respect to the best mode, your argument, your honor, you're absolutely correct. The inventor can't be penalized for having disclosed the best mode. But again, back to your honor's point about the claims need to be read in the context of the specification. Well, we all agree with that. They do not exist in the abstract. That's in bank law, so none of us in this room can disagree with that. And in this- Let's look at our precedent. You referred to our precedent. Judge Bryson and I, in the SIMED case, said that where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims read without reference to the specification might be considered broad enough to encompass the feature in question. But Judge Dyke, who joined us in that opinion, made, I thought, some cogent- She concurred, and a cogent comment, and I'd like to see how you deal with it. He said, the problem is that our decisions provide inadequate guidance as to when it is appropriate to look to the specification to narrow the claim by interpretation, and when it is not appropriate to do so. Until we provide better guidance, I fear, said Judge Dyke, that the lower courts and litigants will remain confused, he could have added, and the appellate court will remain confused. What kind of guidance would you suggest to us in dealing with this case? I would suggest at least two things to focus on, Your Honor. Did the inventor make a representation that all embodiments of the invention ought to include that feature in the specification, or at least more generally make clear, if not using expressly the all-embodiments language, consistent with- What if I say all embodiments shown herein? I think, Your Honor, in that case, then- It says it has the all-embodiments language in it, but then the rest of it seems to restrict that, so I don't think you can make magic words out of all embodiments. I think there, Your Honor, there would be a reasonable argument that that is not a case for disclaimer, because this court plainly stands for the proposition that there are- So then what's your test, that it has to say all embodiments of my invention? Or the invention is. We need not say all the embodiments of the invention include, but when it made clear in the specification what the invention is. And I think coupled with using that as an argument to leverage patentability over the prior art. Is that your second point? Yes, it is. You're coupled. Yeah, coupled. Expand on that. Yes. When an applicant goes to the patent office and says either all embodiments of my invention include a feature, or perhaps no embodiments of my invention include a feature, together with, and this makes my invention better than the prior art, effectively going to the patent office and saying, so that's the bargain I'm asking for. In exchange for, I'm making a public disclosure of this great invention that distinguishes over the prior art. In exchange for that, I would like you to give me a patent. Are you saying patentability turns on improvement? Well, it turns obviously on novelty and on obviousness. Now, that doesn't always make things better. That's the point I'm trying to ask you about. When an applicant such as Akeva here comes to the patent office and says there is a problem with prior art shoes. They do not include detachable heels. That creates a couple of problems. Heels wear out too quickly. You have to throw the shoes away. Or, to a point that, I just went to zero on my time. Now I'm coming back up to nine minutes. I'm sorry. We'll worry about the time. You keep talking. We'll worry about your case. There's also an instance, Your Honor, where Akeva makes an argument. There are two inventions described or two problems described. And there's a lot of talk about midsole compression being another problem addressed. Midsole compression also is addressed by, in the case of the 300 patent, the adjustable heel. And in the case of the 471 patent, the replaceable heel. Both of those patents expressly talk about that when you can adjust the heel in the 300 patent, that helps you deal with the problems of midsole compression. When you can replace the heel in the 471 patent, that helps you deal with the problem. Yeah, but Mr. Thomas says, and you can solve one of those problems by the U-shaped insert that is functioning to fight compression. The U-shaped insert is a reference to the 471 patent. And the patent never says that you can use that separately and apart from a heel that is detachable. There's no instance in that patent where there's any description that a flexible plate or the U-shaped, the recumbent U, or anything like that can be used separate and apart from the invention, which is a detachably secured heel. And I think these are the places in response to the remarks that Judge Dyke made in his concurrence in the PsyMed case. This is some guidance the court can offer. When you say your invention is, when you say all embodiments... Yeah, but you know, PsyMed was a little simpler. It was a binary choice. You either had side-by-side lumens to put in veins or arteries or you had coaxial, one inside the other, sheath-like. So it had to be A or B. That's not what we have here. I'm sorry, I don't understand that, Your Honor. In the case of the 471 patent, we have either a heel that can be removed and manipulated and put back or replaced entirely, attached to the heel, to the shoe, or not, in the case of the 471 patent. You can change the heel or you cannot. In the case of the 300 patent, we have a heel that may or may not be permanently attached, but it must be adjustable. It must be selectively positionable so that you can get the benefits of the invention. You can deal with midsole compression. You can deal with premature wear. You can turn the heel 180 degrees and now... But what about the case law that says that every advantage that the inventor has been able to come up with needn't be claimed in a given claim? If there are three advantages, you're allowed to have a claim that only covers one of the three and another claim that covers two of the three and so on. How do you deal with that argument? It's not inconsistent with the claim construction ruling here whatsoever. The invention is described in the 300 patent as all embodiments of the invention include means for selectively locking the heel. We know that. The all embodiments language gets you to first base or second base or somewhere. But the question is what else? And that feature of the invention addresses various of the disadvantages associated with the prior art. It was the part of the specification that refers to it being used with permanently attached rear soles as well. Right. That is not inconsistent with the court's claim construction ruling. The district court did not find that the heel in the 300 patent needed to be... If it's permanently attached... It could be permanently attached. ...then it's not rotatable. No, it is rotatable. It can be selectively lockable. The district court's... It's not detachable but rotatable. That's correct. I have no idea what that means. The patent describes that quite clearly. But it says the flexible region need not be used only in conjunction with the detachable but also can be permanent. Right. It never says that the flexible... The patent never says the flexible region may be used with a heel that is not adjustable. At the end of the day... So you're saying it's permanent but somehow rotatable. Right. That's described in the patent. That's consistent with Judge Osteen's ruling. He recognized that that was an issue and that is why he did not find in the 300 patent detachability as a requirement. Mr. Klein, what theory of claim interpretation are you resting on? Is this a case, A, where the patentee served as his own lexicographer and gave us an unusual definition of the word secured? Or is this, B, a case where the subject matter was so clearly disavowed in the rest of the specification that we don't care about lexicography or defining the word secured or what? I think it's the latter instance, Your Honor. This is an instance where the specification makes clear that this inventor was surrendering certain subject matter. Now, if that's true, why didn't the examiner say, hold it, Mr. Inventor. You can't claim shoes that are just secured any old way because what you've actually invented is one that pivots or pops off and gets replaced. And therefore, I'm going to make you narrow your claim and put some modifiers in front of the word secured. And if you don't do it, I'm going to reject that as obvious over the prior art. Kevahir used the word secured in the specifications consistently with this meaning of the word secured. They're referred to the mechanical structure for... But then you're not answering the Chief's question, the Chief Judge's question. Why didn't the patent examiner refuse to approve this patent as drafted? Well, because I... Claim that word in it. I'm sorry. I think this ruling, I think that it's consistent with the specification. Secured does allow for adjustability. It does allow for removability. But it's too broad. It's too broad. Your answer is you think the patent examiner understood what you're trying to get us to understand, which is that secured means permanently attached but rotatable. I've long learned not to speculate whether the patent examiner was thinking at the time, Your Honor. I think that... Whether he was thinking or what he was thinking. Stepping away from the microphone, Your Honor. I'm sorry. I've lost my train of thought. You were derailed by the court. Sorry. I do think it's consistent. And I do think that, as I was saying, the case uses the word secured in this manner. It talks about the securing means. It says you can... Specific embodiments are referred to. You can secure the heel in the manner shown. Plainly, the applicant was using the term secured in a way that allowed for adjustability once secured, that allowed for removability and replacement once secured. It's entirely consistent throughout the spec. Anything else you want to cover with the minute and a half left? Well, I think what I would just emphasize, Your Honor, is the court's very recent decision, Honeywell against ITT Industries. And there, there was a significant emphasis on the public notice function. That was a case where there was a claim concerning broadly an electric... No question. That's the overwhelming policy here. That's the whole office of the specification and the claims is to warn all of us competitors what we can freely do and what we have to pay a license to do. Right. And the competitors figure that out by reading the claims in the context of the specification. And they need to know what those claims mean in the context of that specification. And that cannot be broadened over the course of prosecution. It cannot mean one thing the day the case is filed and something else two years later, four years later, ten years later and longer in many instances. The public has a right to know what these claims mean because it read the spec. It understands the applicant's invention. The applicant provided a written description of that invention. In the case of the 300 patent, the heel was adjustable. In the case of the 471 patent, the heel was detachably secured. Thank you very much, Your Honor. All right. Mr. Thomas, you have about two minutes, I believe. Yes, thank you, Your Honor. Mr. Thomas, you've referred several times to the family of patents that this comes out of. And I think you're referring to the fact that there was a parent patent way back in time at some point and all of these were spinoffs. When did the parent get filed? Can you remind me? The very original patent issued it's the 497 patent. It issued from an application filed in 1993. But it's important that Your Honor recognize there are two family trees here. They don't overlap. So there's a family tree from which the 471 patent eventually issued which based on an application originally filed in 1993 which did not include any discussion or description of the flexible plate aspects of Mr. Messin's invention. The application was amended at that point to make sure that the summary of the invention and the abstract of the invention abstract of the on the title page did not include any references to detachable or selectively positionable salts. So these patents have been cooking quietly in outer space since 1993? Well they've been issuing pretty much there's at least three issued patents in each family tree and other applications. So the prosecutors here were masters of the continuation application art. They did a pretty good job at it Your Honor. Whether they were masters I'm not sure but they did what they were allowed to do and importantly there were CIPs. That's an important point Your Honor with respect For the benefit of those of us who don't practice in this field tell us what a CIP is. It's a continuation in part application Your Honor and I used to write them when I practiced and I'm a registered patent attorney. What that means is you file a continuing application claiming a benefit to priority under 35 U.S.C. section 120 but you add new matter. In other words you come up with some other feature some additional improvement on what you originally disclosed. You add that new disclosure and you file a continuing prosecution application or what used to be referred to as the time as a continuation in part application. That the claims of that application You can keep doing this on and on until something appears in the marketplace that you want to zap? Well indeed that's a possibility. Yes. And this court has expressed numerous times that there's no problem with an applicant crafting claims to cover something that's in the market. If he's got a priority date and if he's got disclosure If he's got support and if he's got disclosure in the CIP instance Your Honor for example we wouldn't be entitled perhaps to that very early 1993 filing date for the new material that was added. But the point there Your Honor that I'd really like to emphasize is there are separate patentable features independently patentable. We amended the specification. We're into repetition now and time has expired. Thank you Your Honor. We'll take the case under advisement. We thank